The People ex rel. Richard Fox, Appellant, *v.* Henry I. Hayden, Commissioner, etc., Respondent.

Under the provision of the charter of the city of Brooklyn (§ 55, chap, 583, Laws of 1888), authorizing the appointment by the commissioner of police and excise of boiler inspectors "who shall possess the same powers and privileges as members of the police force," a person so appointed may not be removed except for cause and after notice and a hearing, as provided for by the charter (§ 13), in case of members of that force.

Accordingly *held*, that a dismissal of an inspector, without notice and a hearing, was error.

(Argued April 11, 1892; decided April 19, 1892.)

Appeal from order of the General Term of the Supreme Court in the second judicial department, made May 12, 1890, which affirmed a determination of defendant as commissioner of the department of police and excise in the city of Brooklyn in removing the relator from the office of boiler inspector.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Wm. J. Gaynor* for appellant. The boiler inspectors have the same privilege of irremovability as that possessed by members of the police force. (Laws of 1867, chap. 883; Laws of 1871, chap. 194, § 16; Laws of 1870, chap. 136, § 13; Laws of 1888, chap. 583, § 13.) The words "privilege" and "right" are defined by courts and lexicographers as synonymous. A privilege may be a right. (*People ex rel.* v. *Dikeman,* 7 How. Pr. 124, 130; Laws of 1888, chap. 583, § 4; *People ex rel.* v. *Robb,* 126 N. Y. 180.) Boiler inspectors have an interest in the police pension fund created under the Brooklyn charter. (Laws of 1888, chap. 583, §§ 41, 42, 49.)

*F. A. McCloskey* for respondent. The relator is not a member of the police force. (Laws of 1873, chap. 863; Laws of 1886, chap. 404; Laws of 1888, chap. 583; Laws of 1889, chap. 280; Laws of 1888, chap. 583, §§ 2, 13.) The grant to appellant of the same powers and privileges as the members of the police force have, does not exempt him from removal at the pleasure of the respondent. (Laws of 1888, chap. 583, §§ 12, 19, 20, 25, 28, 32, 42; Laws of 1889, chap. 280; Laws of 1888, chap. 583, §§ 4, 17, 18; Id. chap. 119, § 1; *People ex rel.* v. *Purroy,* 31 N. Y. S. R. 934; Const. N. Y. art. 10, § 3; 1 Dillon on Mun. Corp. chap. 9, § 250.)

O'Brien, J. The judgment of the General Term, from which this appeal is brought, affirmed upon a writ of certiorari, the determination of the commissioners of police and excise of the city of Brooklyn dismissing the relator from the place of boiler inspector in that city. It appears from the relator's affidavit and the defendant's return to the writ that on or about April 10, 1879, the relator was appointed such inspector, that he retained the place till February 29, 1890, when he was removed by the defendant, Henry I. Hayden, commissioner of the department of police and excise, without cause and without a hearing. The defendant in his answer or return to the writ, states that he assumed the duties of the office about the 1st of February, 1890, and that with a view of reducing the

expenses of maintaining the department and in the exercise of the powers and duties imposed upon him, he determined that the services of the relator could be dispensed with and that he be removed from the department. The question, therefore, is whether the relator could be discharged from the office or place which he held in virtue of his appointment, without a hearing.

In order to get as clear a view as possible of the question it is necessary to refer to some statutory provisions concerning the office from which the relator was dismissed.

By chapter 883 of the Laws of 1867 the Metropolitan police board was intrusted with the inspection of steam boilers in the city of Brooklyn, and was authorized to appoint members of the "Metropolitan Sanitary Company" to make the inspection. Subsequently the duty of making such inspection was conferred upon the board of police of the city of Brooklyn, and it was authorized to detail to such duty members of the police force competent therefor. (Laws 1871, ch. 194, § 53.) The amended charter of the city, passed in 1873, imposed upon the police board this same duty of inspection, and for the purpose of executing it power was given and the board was directed to appoint "not to exceed four boiler inspectors who shall be skilled machinists." (Laws 1873, ch. 863, tit. 11, § 52.) The charter also contained a provision which had existed for many years before, to the effect that members of the police force could be removed only for cause, after notice and a hearing (Laws 1873, tit. 11, § 12, ch. 863; Laws 1870, ch. 136, § 13; Laws 1871, ch. 194, § 16), and the more recent act to revise and combine in a single act all existing and local laws affecting public interests in the city of Brooklyn has retained the provision. (Laws 1888, ch. 583, § 13.) In the act last mentioned (§ 52) provision is made for the inspection of boilers by persons who are practical engineers; and after providing for such inspection under rules to be prescribed by the commissioners of police and excise it is provided, in section 55, "For the purpose of carrying out the provisions of the last two sections the said commissioner shall appoint not to exceed six

boiler inspectors, who shall be skilled machinists, and shall possess the same powers and privileges as members of the police force."

. Thus the statute authorized the appointment of six persons possessing certain qualifications, to an office that had attached to it very important duties of a public nature and in which the public were interested. The duration or term of the office was not fixed nor were the powers and privileges enumerated specially, but for brevity the authors of the law referred to, another provision of the statute prescribing the powers, duties and privileges of the members of the police force. They were to possess the same powers and privileges as members of the police force. The precise inquiry is what is meant by the word *privileges*. The learned counsel for the defendant contends that the term was intended to express something less than a right resting in discretion and which might be granted or withheld at the pleasure of some superior power. The words "privileges" and "rights" when used in statutes are sometimes synonymous and we think are clearly so in the statute in question. A statute providing as this does that certain persons shall hold office during good behavior and shall not be removed therefrom except for cause and after notice and a hearing, confers very substantial rights upon such persons, but such rights are very frequently and appropriately enough termed privileges also. The learned counsel for the defendant seems to concede in his argument that the provisions of section 42 of title 11 of the charter, providing for pensions to members of the police force on account of injury, long service, or inability caused by long service or age, for the benefit of themselves or their families, constitute a privilege which attaches to the office of boiler inspector also, under the terms of the statute. If this is so it furnishes a very strong reason why the relator should be exempt from an arbitrary dismissal without cause and at the mere will of the appointing power. The rights and privileges of receiving a pension from the government, based upon long service, carries with it the idea of permanency in the service for which the pension is

ultimately granted.   Such a right or privilege, whatever it may be called, cannot well exist with the power to defeat it at any time before the expiration of the necessary period of service by a discharge of the incumbent without cause and without notice or an opportunity to be heard.   One of the privileges which the members of the police force of the city of Brooklyn possess is the exemption from dismissal during good behavior.   Another privilege guaranteed to them is a hearing before dismissal and a fair opportunity to show that there is no legal ground for it.   This last mentioned privilege, at least, attaches to the office of boiler inspector under the statute.   In order to reach this conclusion it is not necessary to show that a boiler inspector is a member of the police force. It is enough that he has, under the law, the same privileges. It is impossible for him to possess the same privileges, within the meaning of the statute, if he is liable to be dismissed at any time without cause and without a hearing.   It seems to us that the language of the statute, the importance of the place and of the duties to be performed, and its relation to the members of the police force and the police department, all indicate that it was the intention of the legislature to put policemen and boiler inspectors in the same position with respect to dismissal from the service.   It follows that the order appealed from and the determination of the commissioner should be reversed, with costs in all courts to the relator.

All concur.

Order reversed.