In the Matter of UNITED STATES STEEL CORPORATION, Petitioner, v. LAWRENCE E. GEROSA, as Comptroller of the City of New York, Respondent.

First Department, July 9, 1963.

*A. Chauncey Newlin* of counsel (*William L. Hearne, Francis L. Casey, Arthur E. Hauser* and *John Y. Taggart* with him on the brief; White & Case, attorneys), for petitioner.

*Solomon Portnow* of counsel (*Stanley Buchsbaum* with him on the brief; *Leo A. Larkin, Corporation Counsel*, attorney), for respondent.

STEVENS, J. Petitioner, in this article 78 proceeding, seeks a review of respondent's determination of petitioner's liability for business tax imposed pursuant to title B of chapter 46 of the Administrative Code of the City of New York. In order to bring this matter into proper focus a short history of prior proceedings is advisable.

Petitioner, a New Jersey corporation, is a holding company with its principal place of business located in the City of New York. Most of its income, for the privilege years in question, consisted of dividends and interest from some 68 controlled subsidiaries. In those years, 1948, 1949 and 1950, it received dividends and interest in the aggregate amount of $421,075,088.23.

Although petitioner contended it was not doing business within the City or State of New York, and was not a holding company as defined in the respondent's regulations, it nevertheless filed timely returns for each of the privilege years. It reported and paid tax on approximately 2% of its gross income. Petitioner's return set forth the tax was paid "on the same basis heretofore approved by the Comptroller of the City of New York for the calendar years 1934 to 1949, inclusive ".

Respondent, after audit, on June 10, 1952, issued a notice of determination of "Business Tax Deficiency" based in part on a general business basis in the amount of $26,104.95, and, in part, on a financial business basis in the amount of $176,767.28 plus interest and penalties, the total aggregating $257,944.88. The deficiency assessment under the general business tax was computed at the general business rate of one fifth of 1% (Administrative Code, § B46–2.0). The deficiency assessment under the financial business tax was computed at the financial business rate of two fifths of 1% made on an allocation to New York City of 12½% of the dividend and interest income received by petitioner (see Administrative Code, supra). Under the respondent's regulations persons engaged in general business must measure the tax by gross receipts, and persons engaged in financial business must measure the tax by gross income (Comptroller's General Business and Financial Tax Regulations, art. 103).

On April 8, 1954, petitioner compromised the business tax deficiency, executed a consent and waiver (partial) reducing to $689.03 the business tax deficiency which, with interest and penalties of $159.21, made a total of $848.24 which was paid.

After hearings held at petitioner's request, made pursuant to statute, respondent gave notice of his final determination (partial), dated March 7, 1957, confirming his determination of deficiencies of financial business tax for the three privilege years, aggregating $176,767.28, and determining penalties and penalty interest calculated to March 15, 1957, totalling $144,388.62, making a total of $321,155.90.

Prior to the determination, by stipulation dated February 10, 1957, it was provided, in part, " [i]n the event that the taxpayer's liability hereunder is finally determined to be that imposed by the business tax rates, *without allocation*, then it is

stipulated and agreed that the assessment herein would be $808,379.91 '' (emphasis supplied). However, as stated, the taxpayer's liability was concluded to be under the financial business tax rate.

It should be pointed out the deficiencies in general business tax, which were compromised, were determined in relation to pension deficit charges and wire expense charges to subsidiaries, and profit on sale of securities. The financial business tax deficiency, as noted, was determined by allocating to New York City 12½% of the total dividends and interest received by petitioner from all of its controlled subsidiaries and taxing the same at a rate of two fifths of 1%. Thus there was not, apparently, a dual tax upon the same subject matter. ·

Subsequent to the determination of March 7, 1957, petitioner, as required by law, deposited the total amount of the deficiencies and penalty interest with the Treasurer of the city and commenced an article 78 proceeding to review the determination. This court, without opinion, confirmed the determination. On appeal, the Court of Appeals reversed, annulled the determination, and remanded the matter to respondent for further proceedings not inconsistent with its opinion.

The Court of Appeals found the State Legislature never intended '' to give the city authority to include holding companies in the definition of ' financial business '.'' It held '' the Comptroller assessed the deficiency tax without authority '' (7 N Y 2d 454, 460). The court then observed, '' [r]espondent contends that, even if his classification was improper, his determination should nonetheless stand because the amount of tax imposed is less than what would have been imposed had United States Steel been classified as a general business. This premise, viz., that the general business tax would have been greater, is disputed by Steel. In any event we may not here decide the amount of the general business tax, if any, which respondent might have imposed '' (ibid., pp. 460–461).

Pursuant to the remand respondent sent a letter notification of formal hearing, dated June 8, 1960, setting a date for such hearing, which matter, as a result of adjournments requested by petitioner, was eventually set for April 3, 1961. The letter stated: '' [t]he purpose of the hearing is to determine how much of the original assessment by notice of determination of tax deficiency is due from the taxpayer on a general business basis instead of the financial basis on which it was originally computed.''

On April 13, 1961, at the opening of the hearing, the Referee pointed out that an opportunity was being afforded petitioner

to go into the merits of any proposed assessment based on a general business tax rate rather than a financial tax rate. Petitioner took the position that there was no statutory authorization for such hearing, or for respondent to take any other action with respect to the assessment. There was a total lack of jurisdiction.

The position of respondent was that the amount of the general business tax, if any, should be determined " on the basis of further proof which the taxpayer or the City may adduce ", and that the hearing was merely a continuation of those previously held. Aside from offering proof that petitioner had requested several adjournments without challenging respondent's right to hold the hearing, respondent took the position that the burden was on petitioner to adduce proof with respect to the amount of the general business tax to be computed.

The hearings were then held open for 30 days after transcription of the minutes to afford either side an opportunity to request a further hearing. Nothing further was presented and on November 22, 1961, respondent made its final determination (partial) on remand, that petitioner owed a total principal amount of $176,767.28, a total of $144,388.62 interest and penalties, making a total of $321,155.90. The determination was based upon the stipulation dated February 10, 1957, contained no findings, and was in exactly the total amount previously calculated at and for the financial business tax rate.

In this article 78 proceeding to review respondent's determination petitioner argues that under the State Enabling Acts (General City Law, art. 2-B, § 24-a) respondent has no power to impose taxes computed both ways in respect to the same receipts. The formulae for tax imposition by general business or financial business are necessarily in the alternative, and the one chosen by respondent having been annulled, it may not now fall back upon the alternative classification. Petitioner asserts the present assessment is barred by the Statute of Limitations. This contention is based upon a provision of the Administrative Code which provides in pertinent part: " except in the case of a wilfully false or fraudulent return with intent to evade the tax, no assessment of additional tax shall be made after the expiration of more than three years from the date of the filing of a return provided, that where no return has been filed as provided by law the tax may be assessed at any time " (Administrative Code, § B46–15.0, subd. b). Petitioner contends also, the tax is illegal because there was no allocation of receipts; the determination is void because not made in accordance with procedure outlined in the code that if no return be filed or an

318

incorrect or insufficient return be filed, the Comptroller is required to give the taxpayer notice by mail to file a corrected or sufficient return within 20 days (see Administrative Code, §§ B46–6.0, B46–15.0, subd. a), and that the assessment of penalties and penalty interest is void or, at least, an abuse of discretion.

Respondent urges it had continuing jurisdiction and, in the absence of further evidence, it was correct in redetermining the tax at the general business rate. Respondent asserts allocation is not required under the due process or commerce clause of the Federal Constitution, the tax is not barred by the Statute of Limitations, petitioner is subject to a tax as a general business, and respondent was warranted in not remitting penalties.

Initially it must be determined if respondent is barred by the Statute of Limitations from proceeding herein to impose any tax.

The State has empowered the city to impose a privilege tax upon persons carrying on a general business for profit within the city, at a business tax rate not to exceed one fifth of 1% on the gross receipts, and upon persons carrying on a financial business at a tax rate not to exceed two fifths of 1% of gross income (General City Law, § 24-a). Pursuant to the power conferred the city enacted section B46–1.0 *et seq.* of the Administrative Code.

Gross receipts refer to any sale made or services rendered or commercial or business transaction had in the city, but not to include receipts from sales, services or transactions specified in Schedule A. Under Schedule A the tax is payable " upon all receipts received in and/or allocable to the city " from such business. The language of the enabling act and of the code is almost identical (General City Law, § 24-a; Administrative Code, §§ B46–1.0, B46–2.0), so the quotation is equally applicable. Every person subject to tax under title B, General Business and Financial Tax, is required to file a return. Admittedly petitioner timely complied with the code provisions, though its return, by erroneous requirement of respondent, was necessarily classified, under protest, as a financial business tax. Thereafter respondent made its determination, erroneously, that petitioner was subject to a financial business tax in the amount previously indicated. " The determination of the comptroller shall be reviewable for error, illegality, unconstitutionality or any other reason whatsoever ", etc. (Administrative Code, § B46–6.0).

Petitioner availed itself of its right of judicial review. The basic issue before the Court of Appeals was not whether respondent had the power to impose a privilege tax but whether that

power had been exercised properly. The Court of Appeals did not hold there was no power to impose a privilege tax, but merely that there was no power to impose such tax in the manner in which the power had been exercised (7 N Y 2d 454). There was no authority for the city to transfer holding companies from the category of general business to that of financial business and thereafter apply the financial business tax rate.

" [W]here no return has been filed as provided by law the tax may be assessed at any time " (General City Law, § 24a; General Business and Financial Tax, § 14, subd. b; Administrative Code, § B46–15.0, subd. b). It can hardly have been intended that where a party has availed itself of the privilege of doing business over a period of time, received the benefits and protections accompanying the exercise of such privilege, that a mere error in classification bars the collection of a tax. The amendment to extend the area of inclusion to holding companies was not an integral part of the basic law. When such amendment was declared a nullity, all proceedings theretofore taken were nullified, but the underlying law with its accompanying power was not affected (cf. *People ex rel. Farrington* v. *Mensching,* 187 N. Y. 8, 22, 23; *Standard Engraving Co.* v. *Volz,* 200 App. Div. 758; *Matter of Bronx Parkway Comm.* v. *Hylan,* 119 Misc. 785, affd. 206 App. Div. 688, affd. 236 N. Y. 593; McKinney's Cons. Laws of N. Y., Statutes, § 196; General Construction Law, § 92 *et seq.*). It is as if no return had been filed and the power of respondent to assess the tax remained unaffected by any statutory bar of limitation of time. It might be appropriate to observe, since the error here is that of respondent, and petitioner having evidenced its good faith by compliance in filing returns in a manner previously acceptable, that it might be well for respondent to have the opportunity to reconsider the imposition of penalties.

Petitioner asserts this tax is an additional tax to the business tax already levied and in the absence of the filing of a willfully false or fraudulent return with intent to evade the tax (Administrative Code, § B46–15.0, subd. b) (not charged here) respondent is barred by the lapse of three years. The tax sought to be imposed relates, in application, to subject matter not previously taxed. In that sense it is not an increase, augmentation or accession within the prohibition of the statute. The manifest intent of the statute was to permit a privilege tax. When the necessary operative factors are shown to exist an exemption from tax imposition will not be presumed, but must be established by those claiming exemption (cf. *Matter of Young* v. *Bragalini,* 3 N Y 2d 602; *People ex rel. Mizpah Lodge* v. *Burke,* 228 N. Y.

245). No such authority is presented by petitioner. Moreover, respondent on its own initiative may redetermine a tax (Administrative Code, § B46–6.0) and certainly can do so upon remand. The Court of Appeals did not dismiss but remanded for further proceedings, etc.

Upon remand respondent elected to rest upon the stipulation without any independent determination or allocation of taxable receipts. The statute provides, in part, " every person shall pay an excise tax which shall be equal to one-fifth of one per centum upon all receipts received in and/or allocable to the city from such * * * business " (Administrative Code, § B46–2.0). There is a presumption that all receipts are a proper measure of the tax and the burden is on the taxpayer to prove the contrary (Administrative Code, § B46–3.0). It is doubtful that this presumption applies. The city's practice for many years was to allocate. Moreover, its previous taxing of certain receipts on a business basis, and the additional imposition of a financial tax based upon a percentage allocation, was in itself recognition of some exclusionary tax percentage. By statute the tax is to be imposed upon receipts received in *and* allocable to the city, or received in *or* allocable to the city. The statute is written in both the conjunctive and disjunctive.

Under the present circumstances allocation is required. The stipulation upon which respondent relied on remand was made prior to respondent's final determination. It is not clear if the final determination referred to therein relates to the subsequent final determination of respondent in March, 1957, or was intended to survive all proceedings until the ultimate disposition of this matter. It provided for an eventuality premised upon a finding that petitioner was subject to a business tax rate, without allocation. The final determination in the prior proceeding made no such determination nor was one made in the present proceeding. Neither did respondent proceed in accordance with the stated purpose contained in its notice of hearing, i.e., to determine " how much of the original assessment * * * is due." Respondent merely construed the 1957 stipulation as authority to impose a tax subject to a limitation in amount. The identity, on remand, of the principal amount and penalty with that found in the earlier proceeding, though presumably calculated at different rates, leads to the conclusion there was at most an exchange of labels or classification. Some of the earlier penalty was based upon respondent's erroneous calculation of a tax deficiency at two fifths of 1% on a 12½% allocation. Presumably the principal amount on remand would be different and the penalty, if any, would be similarly affected.

In these circumstances, on the law, and in the interests of justice, the matter should be remanded to respondent to recompute the tax on an allocation basis, and that it consider further the question of penalty (cf. *Matter of McCall Corp. v. Gerosa*, 2 A D 2d 358).

EAGER, J. (concurring). I concur in an annulment of the determination of the Comptroller and remission of this matter to him for further proceedings.

In connection with the prior proceedings with respect to the assessment of a tax for the years 1948, 1949 and 1950 against the petitioner on the "financial business" basis, it appears that the parties had stipulated "that, had respondent elected to treat United States Steel as a 'general business', and to apply the then prevailing 'general business' rate of one fifth of 1% to 'gross receipts', *without allocation,* the principal tax would have amounted to $808,379.91. But, apart from its contention that it is entitled to be treated as a 'general business,' United States Steel has never conceded that the tax could have been imposed upon the basis of the entire gross receipts, without regard to apportionment." (*Matter of United States Steel Corp. v. Gerosa*, 7 N Y 2d 454, 458.)

The Court of Appeals annulled the assessment of a tax for the years in question against the petitioner on the "financial business" basis, holding that the statute did not authorize the taxing of the petitioner, as a holding company, at the "financial business" rate. (See, further, *Matter of United States Steel Corp. v. Gerosa, supra.*) The Court of Appeals, without passing upon the liability of the petitioner for a tax at the "general business" rate, held (p. 461): "we may not here decide the amount of the general business tax, if any, which the respondent might have imposed", and remitted the matter to the Comptroller for further proceedings not inconsistent with its opinion.

The dividend and interest income received by the petitioner was on the remand to be considered by the Comptroller in calculating the general business tax owing by the petitioner for the years in question, and I agree that the assessment of a tax deficiency to be now fixed by him on a proper basis is not barred by the Statute of Limitations.

A question remaining for determination by the Comptroller on the remand by the Court of Appeals was whether or not he was required to allocate and exclude from the tax base dividends and interest received by petitioner from controlled corporations located and doing business wholly without the State or partly without and partly within the State. By stipulation, the

parties had agreed to the amount of the tax at the "general business" rate "without allocation", but the issue of whether or not allocation was required was left open.

The Comptroller, on the remand, in fixing the deficiency of tax on a "general business" tax basis, took the position that under the facts, the allocation of income was not necessary. He argues on this appeal that "there is no need to allocate at all". And, as the petitioner states, "All of the facts in this regard are in the record, and there is no dispute about them." So, we are squarely faced with the question of whether or not the petitioner is properly to be subjected to a "general business" tax to be calculated on basis of its entire dividend and interest income. In fact, as I see it, if allocation is not required, the determination of the Comptroller should be confirmed.

I would conclude, however, that, as a matter of law, the action of the Comptroller in assessing the "general business" tax against the petitioner on a base of its entire dividend and interest income was illegal. Such action clearly constitutes a discriminatory application of the taxing statute and of the Comptroller's regulations without regard to due relationship to business transacted in the City of New York. The imposition of a tax on basis of all of such income, without allocation, is contrary to the intent of the statute and the regulations, construed as a whole, and, in fact, runs counter to the Comptroller's practice of many years standing in the following of an allocation formula in calculating a tax on receipts from foreign business activities. Furthermore, the action here cannot be justified on the ground that the tax imposed does not exceed a tax calculated under article 305 of the regulations. Said article was enacted to provide for allocation of receipts of dividends and interest where a tax was to be imposed at the "financial business" rate and, in any event, the fixing in such regulations of a 12½% minimum of total income as a tax base, would appear on the record here to be illegal in its application to the petitioner. (See *Matter of Gulf Oil Corp.* v. *Joseph,* 307 N. Y. 342.)

RABIN, J. (dissenting in part). I agree substantially with the conclusions reached in the majority and concurring opinions except as to the conclusion that allocation is required. I perceive no constitutional, statutory or regulatory basis for such a holding. Article 305 of the regulations which provides for the method of allocation with respect to holding companies refers to such entities only in the event they could be considered taxable at the "financial business" rate in conformity with allocations generally provided for such category of businesses. There was

no corresponding regulation for the years in question as to businesses taxable at the " general business " rate.

Thus, unless the Comptroller's prior practice of allocation — albeit without a mandate — requires its continuance, allocation may not be directed. No support for a rule of law requiring such continuance is advanced by petitioner. The petitioner is a holding company whose sole income — with minor inapplicable exceptions — consists of dividends and interest received from subsidiaries. Regardless of where those subsidiaries are located the business of the holding company was conducted solely in the City of New York. That being so no allocation of such receipts is required.

Accordingly I vote to remand the matter to the respondent but only for the purpose of further consideration on the question of penalties.

BERGAN and BASTOW, JJ., concur with STEVENS, J.; EAGER, J., concurs in separate opinion; RABIN, J. P., dissents in part in opinion.

Determination annulled, on the law and in the interests of justice, without costs, and the matter remanded to respondent to recompute the tax on an allocation basis, and to consider further the question of penalty (cf. *Matter of McCall Corp.* v. *Gerosa,* 2 A D 2d 358).